IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FEB 1 0 2011

CLERK, U.S. DISTRICT CO...

WAG MORE DOGS, LLC                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   1:10cv1347 (LMB/TCB)
                                      )
MELINDA M. ARTMAN, et al.             )
                                      )
            Defendants.               )

## MEMORANDUM OPINION

Before the Court are plaintiff's Motion for Preliminary Injunction [Dkt. No. 3] and defendants' Motions to Dismiss [Dkt. Nos. 15, 18, & 19]. For the reasons stated below, defendants' Motions to Dismiss will be granted, and plaintiff's Motion for Preliminary Injunction will be denied as moot.

## I.  Background

This civil action is a First Amendment challenge to Arlington County's Zoning Ordinance regarding the display of commercial signs. The plaintiff, Wag More Dogs, LLC ("Wag More Dogs"), is a canine daycare, boarding, and grooming facility that was founded in 2008 by Kim Houghton ("Houghton"). See Pl.'s Compl. ¶¶ 1, 12. The Wag More Dogs building is located at 2606 South Oxford Street in Arlington, Virginia, and its rear wall abuts an Arlington County, Virginia park where local residents often take their dogs; that park is colloquially known as the "Shirlington Dog Park." Id. ¶¶ 15, 18. The area in which the Wag More Dogs facility is located is zoned as an "M-1" or "Light Industrial" District. See id. ¶ 39.

In July 2009, Houghton undertook substantial renovations of the Wag More Dogs building. As part of those renovations, she commissioned a local artist to paint a mural of dogs, dog bones, and paw prints on the rear cinder-block wall of the building.[1] Id. ¶¶ 24; 27-30. The mural faces the Shirlington Dog Park and is visible, at least to some extent, from South Arlington Mill Drive and the Four Mile Run Trail. Arlington County's subsequent designation of that mural as an improper "business sign" under its Zoning Ordinance, along with its decision that Houghton must remove the mural or take other steps to bring it into compliance with the local zoning laws, forms the basis for this civil action, in which Wag More Dogs alleges that Arlington County ("County") and its Zoning Administrator, Melinda M. Artman ("Artman"), violated plaintiff's First Amendment rights.

## A. Wag More Dogs' Mural

The cartoon dog mural on the exterior rear wall of the Wag More Dogs building is approximately 16 feet by 60 feet in size, and was completed at a cost to plaintiff of $4,000. Id. ¶¶ 29-30. As Wag More Dogs frankly admits in its Complaint, the mural was commissioned, at least in part, to "create goodwill with the people who frequented the [Shirlington] dog park, many of whom were potential Wag More Dogs customers." Id. ¶ 26. The mural was

---

[1] See photograph of the Wag More Dogs mural at p. 32, infra.

painted by a local artist, Mark Gutierrez, who designed the artwork
and explicitly incorporated "some of the cartoon dogs in Wag More
Dogs' logo" into the piece. Id. ¶ 27. In fact, the dogs in the
mural bear a striking resemblance to the cartoon dogs on the Wag
More Dogs website.[2]

## B. Arlington County's Zoning Ordinance

Arlington County has a strict Zoning Ordinance regulating the
use of "sign[s]," which are defined as "[a]ny word, numeral,
figure, design, . . . [or] display . . . [which] is used to direct,
identify, or inform the public while viewing the same from
outdoors." See Arlington County Zoning Ordinance § 34(B). Section
34(A)(1) of the Zoning Ordinance states that "[a] sign permit shall
be obtained from the Zoning Administrator before any sign or
advertising is erected, displayed, or altered." Id. § 34(A)(1).

Moreover, in light industrial districts, designated as "M-1"
districts, a tenant is limited to three commercial advertising
signs, "up to a maximum total sign area of sixty (60) square feet
per tenant." Id. § 34(G)(1). Such commercial advertising signs
are defined as "[b]usiness signs identifying the products or
services available on the premises or advertising a use conducted
thereon." Id. Businesses that wish to exceed the 60-square-foot
size limitation must apply for a "special exception" permit under
the County's Comprehensive Sign Plan. An application for such a

_____

[2] See screenshot of Wag More Dogs' website at p. 33, infra.

3

special exception permit requires a non-refundable $1,782 fee, and the Arlington County Board may then grant or deny the request based on an assessment of whether the proposed sign will "adversely affect the health or safety of persons residing or working in the neighborhood" or "be detrimental to the public welfare or injurious to property." Id. §§ 34(a)(3) & 34(G)(1).

Section 37(D)(1) of the Zoning Ordinance states that any individual or business that violates any provisions of the ordinance "shall be subject to a civil penalty of two hundred dollars ($200.00) for the first violation." Id. § 37(D)(1). If an individual or business does not correct the purported violation within a ten-day period, they may be subject to "a civil penalty of not more than five hundred dollars ($500.00), or such lesser amount so that the total amount of fines imposed will not exceed a total of five thousand dollars ($5,000.00) arising out of the same set of facts, for each subsequent violation." Id. Finally, Virginia law and § 37(G) of the Zoning Ordinance provide that once the County levies five thousand dollars in civil penalties for a single violation, government officials may also prosecute the violation "as a criminal misdemeanor, as provided within the Code of Virginia." Id. § 37(G).

C. **Enforcement of the Sign Ordinance against Wag More Dogs**

On Friday, August 13, 2010, defendant Artman, the Arlington County Zoning Administrator, contacted Houghton to tell her that in

4

her view, the Wag More Dogs building mural violated Arlington County's zoning ordinance because it was a "sign" advertising or promoting the canine daycare services provided therein, and it exceeded the relevant size limitations for commercial signs in that light industrial district. See Pl.'s Compl. ¶¶ 43-45. As a result of the alleged zoning violation, Artman placed a "lock" on Wag More Dogs' building permit, thereby preventing any final building inspection of the renovated facility. Id. ¶ 46. Houghton was given the options of painting over the artwork, changing the mural to something that displayed images other than dogs, applying for a special exception permit under the Comprehensive Sign Plan, adding lettering to the mural saying "Welcome to Shirlington Park's Community Canine Area," and/or covering the mural with a tarp until the County Board could act on her application for a special use permit. Id. ¶¶ 57-60. Houghton elected to cover the artwork with a tarp, and Artman subsequently released the "lock" on the building permit. Id. ¶¶ 61-63.

On September 10, 2010, Wag More Dogs received its temporary certificate of occupancy. That certificate of occupancy contains a provision stating that "[t]his permit is valid as long as the tarp covering a mural that also meets the definition of a sign as determined by the Zoning Administrator and which faces Shirlington Park remains in place." Id. ¶ 67. Wag More Dogs opened for business on September 15, 2010. Id. ¶ 68. Since then, Wag More

5

Dogs has had to adjust the tarp several times at the direction of Arlington County officials to secure it and to ensure that the underlying artwork is not visible. See id. ¶¶ 70-71.

D. **Plaintiff's Complaint and Defendants' Motions to Dismiss**

On December 2, 2010, Wag More Dogs filed its Original Complaint for Declaratory and Injunctive Relief and an accompanying Motion for Preliminary Injunction [Dkt. No. 3]. The Complaint names Arlington County and Artman, in her official capacity as Zoning Administrator, as defendants and alleges that Arlington County's zoning restrictions, both as drafted and as applied, violate plaintiff's First Amendment rights. See id. ¶¶ 81-127. Plaintiff's Motion for Preliminary Injunction seeks an order enjoining Arlington County from revoking Wag More Dogs' certificate of occupancy or otherwise fining or penalizing Houghton for displaying her dog mural for the duration of this litigation. See Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. at 25.

On December 30, 2010 and January 3, 2010, defendants filed three identical Motions to Dismiss for Failure to State a Claim and Lack of Jurisdiction [Dkt. Nos. 15, 18, & 19.]. Defendants argue that plaintiff has not alleged any plausible constitutional violation, and that applicable First Amendment caselaw in fact forecloses relief. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss at 1-2. Defendants also argue that this Court lacks subject matter jurisdiction over this civil action because the

plaintiff does not have standing to challenge § 34(B) of the Zoning Ordinance, in light of its alleged violation of the Zoning Ordinance. Id. at 2.

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in a light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief." Id. at 1950. "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" in order to survive a Rule 12(b)(6) motion to dismiss. Id. at 570.

## III. Discussion

Under applicable First Amendment law, plaintiff's Complaint fails to state any plausible entitlement to legal relief. Defendants' Motions to Dismiss will therefore be granted, and plaintiff's Motion for Preliminary Injunction will be denied.

### A. This Court Has Subject Matter Jurisdiction Over this Action

As a preliminary matter, contrary to defendants' contention, the Court finds that it has subject matter jurisdiction over this action. In their Motions to Dismiss, defendants advance the argument that the plaintiff lacks standing to challenge the provisions of the Zoning Ordinance defining a "sign" because its mural "clearly violates" the 60-square-foot limitation set forth in § 34(G)(1) of the ordinance. See Mem. of Law in Supp. of Def.'s Mot. to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction ["Def.'s Mot. to Dismiss"] at 10-11. Defendants then contend that because the Complaint does not appear to specifically challenge § 34(G)(1), plaintiff essentially concedes that its dog mural is prohibited under that "valid and independent" portion of the zoning code. As a result, defendants argue, plaintiff's requested relief cannot redress the injury claimed, plaintiff lacks standing to sue, and this Court ultimately lacks subject matter jurisdiction. See id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)).

Defendants' standing argument, however, is based on a

8

misunderstanding of the Complaint, which does, in fact, challenge the County's sign ordinance, and in particular its definition of a "sign."  More specifically, the Complaint vehemently contends that the application of § 34(G) to classify Wag More Dogs' mural as an improper "sign," and thereby forbid it under the Zoning Ordinance, is a violation of plaintiff's First Amendment rights.  See Pl.'s Compl. ¶¶ 81-127.  The claim that Wag More Dogs somehow lacks standing because of its alleged violation of the very zoning scheme that it is attempting to invalidate as unconstitutional therefore gets matters exactly backwards.

Indeed, defendants' assertion that plaintiff did not specifically challenge § 34(G)(1) of the Zoning Ordinance is irrelevant, as that provision of the ordinance does even not define what a "sign" is.  Rather, all § 34(G)(1) provides is that "[b]usiness signs identifying the products or services available on the premises or advertising a use conducted thereon" may be displayed in an "M" district if they are no larger than 60 square feet.  The key inquiry in this case, however, depends upon how Arlington County officials determine whether a given display qualifies as an improper "sign."  That inquiry hinges, inter alia, on the definition of a "sign" in § 34(G) as something used to "direct, identify, or inform . . ." the public, and it is exactly that definition that Wag More Dogs challenges.

Accordingly, if plaintiff were to prevail on its argument that

the County's definition of "sign" somehow violates the First
Amendment, that could lead to the invalidation of the County's sign
regulation scheme, either on its face or as applied to plaintiff.
Plaintiff's requested relief would therefore redress the specific
alleged harm that plaintiff is asserting. As such, Wag More Dogs
has standing to sue under the three-part "injury in fact,"
causation, and redressability test announced in Lujan, and there is
no basis upon which to find that this Court lacks subject matter
jurisdiction over this action. See Lujan, 504 U.S. at 560-61.

   B. **The Challenged Zoning Regulations are Constitutional
      Because They are Content Neutral, Restrict Commercial
      Speech, and Meet Intermediate Scrutiny.**

          1. Intermediate scrutiny, not strict scrutiny, applies.

     Wag More Dogs, however, has failed to articulate any plausible
theory of legal relief under the First Amendment. Courts have long
recognized that the First Amendment does not guarantee the right to
express onself at all times and places and in any manner that a
person may wish. See Heffron v. Int'l Soc'y for Krishna
Consciousness, Inc., 452 U.S. 640, 647 (1981). Moreover,
longstanding First Amendment jurisprudence has designated a number
of categories of speech that receive lessened constitutional
protection, in light of their lesser societal importance or the
existence of other incentives to engage in such communication that
correspondingly diminish the need for robust First Amendment
protection. See Central Hudson Gas & Elec. Corp. v. Public Serv.

Comm'n of N.Y., 447 U.S. 557 (1980) (subjecting restrictions on commercial speech to a lessened form of "intermediate" scrutiny because commercial speech is both less valuable and more durable than core political speech). The type of speech at issue, and the accompanying standard of scrutiny under which a court must analyze any challenged governmental interference with that speech, are therefore frequently outcome determinative factors in any First Amendment case.

In the instant case, plaintiff argues that its mural is expressive speech, and that Arlington County's Zoning Ordinance is impermissibly content-based. See Pl.'s Compl. ¶ 107 (alleging that "[t]he First Amendment protects Plaintiff's right to express itself through visual media such as paintings, artwork, and murals"); id. ¶ 114 (alleging that "[d]efendants, in order to decide whether a piece of art directs, identifies, or informs the public, must conduct a probing inquiry into both the artwork's message and the identity of the person or business that wishes to speak"); see also Pl.'s Mot. for Prelim. Inj. at 7-12. Plaintiff thus contends that the Zoning Ordinance and the actions taken by defendants in enforcing it against Wag More Dogs should be analyzed under strict scrutiny. See id. at 12.

However, in invoking the stringent protections of strict scrutiny, Wag More Dogs is barking up the wrong tree. To determine whether a regulation is content-neutral or content-based, the

11

"principal inquiry" in the Fourth Circuit is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Covenant Media of S.C. v. City of N. Charleston, 493 F.3d 421, 432 (4th Cir. 2007). In this case, the Zoning Ordinance merely imposes certain restrictions on "signs," on the basis of their size and location, along with whether they are commercial signs directed at advertising to and attracting customers or not. See Arlington County Zoning Ordinance § 34(G)(1) (providing that each building in an "M" district may only have three "[b]usiness signs identifying the products or services available on the premises or advertising a use conducted thereon," and that the total space devoted to such signage may not exceed 60 square feet). Accordingly, the County's ordinance is clearly content-neutral, not content-based, on its face.

It is true, of course, that determining whether any particular display is a "business sign" that runs afoul of § 34(G)(1) requires Arlington County officials to undertake a general inquiry into the nature of the display and its relationship to the business on which it is displayed. However, the County's zoning restriction is still aimed only at identifying speech based upon its general category, rather than at targeting the speech because of any governmental disagreement with the specific message conveyed. In this case, for example, plaintiff has not plausibly alleged that the County objected to its mural based upon the message of "happy cartoon dogs"

12

that it wished to convey. See Pl.'s Compl. ¶ 1. Rather, the facts
as pled by the plaintiff establish that the County simply neutrally
applied its regulations in determining that the mural was a
"business sign," and that it far exceeded the 60-square-foot size
limitation set forth in § 34(G). See id. ¶ 30 (admitting that the
mural "is roughly sixteen feet tall by sixty feet wide.").

Indeed, to hold that any governmental effort to classify speech
as a "business sign" versus a "non-business-related mural" is
necessarily content-based discrimination, thereby triggering strict
scrutiny, would render the lessened scrutiny that attaches to
restrictions on commercial speech a constitutional nullity. See
Covenant Media, 493 F.3d at 432 (upholding a sign ordinance's
differential treatment of signs based on their location and
concluding that "[t]o the extent that the Sign Regulation required
looking generally at what type of message a sign carries to
determine where it can be located, this 'kind of cursory
examination' did not make the regulation content based") (citing
Hill v. Colorado, 530 U.S. 703, 721 (2000)); see also Am. Legion
Post 7 of Durham v. City of Durham, 239 F.3d 601, 608 (4th Cir.
2001) (holding that "[s]ize . . . is not a content criterion," and
that regulations that distinguish between commercial and
noncommercial messages are not content-based, so long as they do not
evince a content-based purpose). Arlington County's regulations are
therefore content-neutral as a matter of law; accepting plaintiff's

13

argument to the contrary would require turning basic First Amendment jurisprudence on its head.

Finally, the County's effort to restrict the size of "business signs" constitutes a quintessential regulation on commercial speech, and the Wag More Dogs mural is itself a classic example of such commercial speech. Plaintiff in fact admits that one of the primary purposes behind its dog mural was to engender "goodwill" with "potential Wag More Dogs customers." Pl.'s Compl. ¶ 26. Furthermore, it simply cannot be a coincidence that the cartoon dogs on the mural are so strikingly similar in appearance to the cartoon dogs in Wag More Dogs' logo, which it prominently displays on its website and in a small sign displayed over its front door. See id. ¶ 27; see also Mem. Op. Exs. A & B. On this record, plaintiff cannot reasonably assert that the dog mural is anything other than a business sign, erected as part of a business strategy to advertise and promote the Wag More Dogs brand. Accordingly, the County's restrictions on Wag More Dogs' purely commercial speech will be subjected to the lesser form of scrutiny established in Central Hudson.

## 2. As a Matter of Law, the County's Zoning Ordinance Passes Intermediate Scrutiny

The Central Hudson test requires that neutral restrictions on commercial speech directly serve a "substantial" governmental interest, in a manner that is "in proportion" to that interest and not more restrictive than necessary to achieve it. 447 U.S. at

14

564. Under governing law, Arlington County's Zoning Ordinance
meets that intermediate test, and plaintiff's challenge to § 37(G)
of the Zoning Ordinance therefore fails to state a plausible claim.

The purposes of the County's sign restrictions, as detailed in
the Zoning Ordinance itself, are to:

> reduce the traffic hazards caused by such unregulated
> signs which may distract, confuse, and impair the
> visibility of motorists and pedestrians; ensure the
> effectiveness of public traffic signs and signals;
> protect property values by insuring the compatibility
> of property with that surrounding it; provide an
> attractive visual environment throughout the County;
> [and] protect the character and appearance of the
> various neighborhoods in the County . . .

Arlington County Zoning Ordinance § 34. Those interests in
aesthetics and traffic safety are the precise sort of interests
which courts have previously found to be "substantial." See
Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 508 (1981)
("Nor can there be substantial doubt that the twin goals that the
ordinance seeks to further - traffic safety and the appearance of
the city - are substantial governmental goals"); see also Members
of the City Council of the City of Los Angeles v. Taxpayer for
Vincent, 466 U.S. 789, 806 (1984) (recognizing that localities may
ban certain signs in furtherance of a "weighty" interest "in
proscribing intrusive and unpleasant formats for expression").

In fact, the Fourth Circuit in Covenant Media upheld a
content-neutral sign ordinance similar to the one challenged here,
finding that an ordinance that distinguished between on-premises

15

and off-premises signs, and defined off-premises signs as signs "identifying or advertising a business, person, or activity, or goods, products, services, or facilities not located on the premises where the sign is installed," did not run afoul of the First Amendment because the City's goal was to "eliminate confusing, distracting and unsafe signs, assure the efficient transfer of information, and enhance the visual environment of the City of North Charleston," rather than to "stymie any particular message." 493 F.3d at 433-34. Arlington County's commercial sign ordinance is sufficiently similar to the ordinance in Covenant Media to command a similar result.

Additionally, the County's ordinance is properly tailored to serve its stated interests. The ordinance does not ban commercial signs; it simply restricts the size of business signs in certain designated areas, and "[i]t is common ground that governments may regulate the physical characteristics of signs." City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994). The existence of large, obtrusive advertising signs is the very evil sought to be eradicated, and the accumulation of such signs would create the very traffic hazards and visual clutter with which the County was concerned. As such, the County's proper time, place, and manner restriction on the size and location of such signs "curtails no more speech than is necessary to accomplish [the County's] purpose." Taxpayers for Vincent, 466 U.S. at 810.

16

Admittedly, Arlington County's ordinance is in some senses under-inclusive, because it allows individuals and businesses to erect some large non-commercial signs, while prohibiting all "business signs" in excess of 60 square feet. See Arlington County Zoning Ordinance § 34(G)(1). For example, a mural on plaintiff's building that depicted generic images of waterfalls, meadows, flowers, or some other object or scenery entirely unrelated to Wag More Dogs' "doggy daycare" business would not violate § 34(G)(1), nor would a County informational mural that included images of dogs but said "Welcome to Shirlington Park's Community Canine Area." Moreover, other buildings in the same light industrial district where Wag More Dogs is located have generic artwork painted on them, and the County indicated at oral argument on the instant motions that it was not concerned with removing those images. Plaintiff thus contends that the County's asserted interests in traffic safety and avoiding visual clutter cannot be genuine, given that large non-commercial paintings are permitted in the very geographic area where large commercial signs are forbidden. See Pl.'s Mot. for Prelim. Inj. at 8-9.

Plaintiff's argument, however, misses the forest for the trees. Plaintiff is, of course, correct that a single informational sign or mural depicting generic scenery might be just as unsightly and distracting to drivers as a large business sign. But the crucial distinction is that there are far greater economic

17

incentives for businesses to erect advertising signs on their exterior walls than for those same businesses to spend their own money commissioning generic murals on their buildings merely to beautify the surrounding areas. In fact, as the Supreme Court recognized in Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748 (1976), commercial speech is "more durable than other kinds," and "[s]ince advertising is the *sine qua non* of commercial profits, there is little likelihood of its being chilled . . . [or] foregone entirely," even when governments regulate it. Id. at 772 n.24. Meanwhile, there is every risk that if large commercial advertising murals like Wag More Dogs' were permitted, other business might well emblazon the sides of their buildings with such paintings. The result, in the aggregate, could be a virtual cacophony of competing commercial signs, with substantially adverse effects on traffic safety and visual aesthetics. Arlington County's prohibition on excessively large "business signs" aims to avoid just such a result - and rightly so. See Metromedia, 453 U.S. at 508. For these reasons, § 34(G)(1) of the County's Zoning Ordinance easily passes muster under Central Hudson.

## C. The County's Definition of a "Sign" Is Not Unconstitutionally Standardless, Overbroad, or Vague

Plaintiff next challenges Arlington County's definition of a "sign," both in the Zoning Ordinance itself and as interpreted by Artman, the Zoning Administrator, as unconstitutionally vague and

18

as vesting County officials with too much standardless discretion.
See Pl.'s Mot. for Prelim. Inj. at 14-18 (quoting Zoning Ordinance
§ 34(B)).  None of plaintiff's arguments, however, states a
plausible claim to relief.

### 1.  The ordinance is not unconstitutionally vague.

First, as a matter of law, the Zoning Ordinance's definition
of a "sign" as "any word, numeral, [or] figure . . . [that] is used
to direct, identify, or inform the public . . . " is not
unconstitutionally vague.  To prevail on its facial challenge,
plaintiff must show that "no set of circumstances exist[s] under
which the [law] would be valid, i.e., that the law is
unconstitutional in all of its applications."  United States v.
Masciandaro, 648 F. Supp. 2d 779, 792 (E.D. Va. 2009) (Ellis, J.)
(citing Wash. State Grange v. Wash. State Republican Party, 552
U.S. 442, 449-50 (2008)).  However, plaintiff's argument in this
case, roughly stated, reduces to the assertion that the definition
of a "sign" as something that "direct[s], identif[ies], or
inform[s]" the public is vague because there are some limited,
hypothetical circumstances in which those words might be unclear.
Under prevailing law, that is not sufficient.  Indeed, plaintiff's
own argument is self-defeating, because plaintiff admits that in
many circumstances, the County's definition of a "sign" is
perfectly clear.  See Pl.'s Opp. to Mot. to Dismiss at 6, 13
(admitting that "one can imagine situations to which one of these

19

words would be clearly applied," and that "it may be easy in some instances to determine if a putative sign is used to 'direct, identify, or inform'").

Plaintiff's argument also ignores a substantial body of case law holding that common words, when given their plain and ordinary meanings, do not need to be exhaustively defined, or even defined at all within a given regulation, to survive a challenge for vagueness. See, e.g., Imaginary Images, Inc. v. Evans, 612 F.3d 736, 749 (4th Cir. 2010) (holding that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity") (quoting Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989)). Rather, a statute need only be "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074, 1079 (4th Cir. 2006).

Arlington County's Zoning Ordinance comports with that basic requirement. The language that Arlington County uses is sufficiently definite and precise to inform an ordinary person exercising common sense as to what is proscribed, because words like "direct, identify, and inform" are words of common usage, with plain and ordinary meanings that can be easily understood by the average individual. Moreover, the "direct, identify, and inform" definition in § 34(B) of the Zoning Ordinance cannot be read in a vacuum. Although the Complaint seeks to isolate that phrase and

read it out of context, the ordinance itself supplies added clarity by spelling out, for example, that "[b]usiness signs" may not exceed certain size limitations in certain areas, and by further sub-defining business signs as "those that "identify[] the products or services available on the premises or advertis[e] a use conducted thereon." Arlington County Zoning Ordinance § 34(G). The statutory scheme as a whole, particularly when read in light of the limiting construction supplied by § 34(G), therefore gives adequate notice of the types of signs that are subject to regulation.

In fact, the ordinance's language closely tracks other sign ordinances that the Fourth Circuit and other courts have previously upheld. See Covenant Media, 493 U.S. at 425 (upholding a sign ordinance that defined off-premises signs as signs "identifying or advertising a business, person, or activity, or goods, products, services or facilities not located on the premises where the sign is installed"); see also Clear Channel Outdoor v. City of N.Y., 594 F.3d 94, 99 (2d Cir. 2010) (upholding New York City's sign regulation, which defined an advertising sign as "a sign that directs attention to . . ." services offered on the premises). Accordingly, as a matter of law, the Arlington County ordinance gives persons of ordinary intelligence sufficient notice of what types of signs are forbidden, and interpreting the ordinance does not require any subjective weighing of interests or any assessment

of qualitative modifiers. As a result, plaintiff's allegation that the Arlington County Zoning Ordinance's definition of a "sign" is unduly subjective and vague fails to state a plausible claim to relief.

Finally, any argument by plaintiff that *it* did not realize that its mural was disallowed by the Zoning Ordinance is clearly belied by the facts alleged in the Complaint, which states that Wag More Dogs is a business that offers dog grooming, walking, and boarding services, and that its 960-square-foot mural features the same "cartoon dogs" that are depicted in its logo. See Pl.'s Compl. ¶¶ 1, 27, 30. Plaintiff even admits that it intended to use its mural to attract customers from the nearby dog park by engendering "goodwill" with them. Id. ¶ 26. Wag More Dogs' mural is therefore a classic form of branding and advertising, and it plainly "directs . . . and informs" the public, "identif[ies] the products or services available on the premises, [and] advertis[es] a use conducted thereon." Plaintiff therefore cannot plausibly assert that its mural does not meet the ordinance's definition of a "sign," or that the mural was not clearly barred by the County's 60-square-foot limitation on "business signs" in light industrial districts.

## 2. Artman's "any relationship" test is not unconstitutional.

In addition to challenging the plain language of the County's Zoning Ordinance, plaintiff also challenges an interpretation of

that ordinance offered by Artman in an informal e-mail exchange with Houghton after zoning enforcement proceedings began. Specifically, after Houghton asked "what correction would be needed to change the [Wag More Dogs] sign into a mural?," Artman responded:

> [For] the mural to NOT be considered a sign, it may depict anything you like EXCEPT something to do with dogs, bones, paw prints, pets, people walking their dogs, etc. In other word [sic], the mural cannot show anything that has any relationship with your business. If it does, then it becomes a sign.

Pl.'s Mot. for Prelim. Inj. Ex. 4 (Aug. 17, 2010 e-mail). Based upon that e-mail exchange, plaintiff alleges that the County has a "pattern and practice" of using the so-called "any relationship test" to determine which displays count as impermissible advertising signs. See Pl.'s Compl. ¶¶ 56-57, 116; Pl.'s Opp. to Mot. to Dismiss at 10. Plaintiff then argues that the "any relationship" test is vague, overbroad, and unconstitutional. Id. Plaintiff's arguments on that point are no more persuasive than its arguments against the text of the ordinance.

First, plaintiff has not plausibly alleged that the County even uses the "any relationship" test as a decisive interpretation of its Zoning Ordinance. That language appears nowhere within the text of the ordinance itself, and aside from the single e-mail that Artman sent to Houghton, the Complaint does not include any plausible factual allegations to establish that the County actually uses the "any relationship" test to make formal zoning decisions.

23

Indeed, Artman's e-mail, a copy of which is attached to plaintiff's Motion for Preliminary Injunction, appears to be nothing more than an informal response offered by the Zoning Administrator to answer Houghton's *own* question about how she could bring the Wag More Dogs painting into line with the County's laws. See Pl.'s Mot. for Prelim. Inj. Ex. 4. Plaintiff therefore has not plausibly alleged that Artman's statement constitutes a binding interpretation of the ordinance. Indeed, any such allegation would be entirely implausible, as Virginia law makes clear that informal statements by Zoning Administrators are not official interpretations. See Vulcan Materials Co. v. Bd. of Supervisors of Chesterfield Cnty., 248 Va. 18, 24 (1994) (holding that advisory comments by local officials are not official interpretations and cannot be appealed, and that challenges can only be raised to decisions by the Zoning Administrator when those decisions are official, have been reduced to writing, and are accompanied by a required statement that they are subject to appeal).

Moreover, even assuming, arguendo, that the "any relationship with [the] business" language in Artman's e-mail qualifies as an official interpretation by the County, it still adequately squares with the valid regulation in the ordinance itself regarding signs that "identify[] the products or services available on the premises or advertis[e] a use conducted thereon." Arlington County Zoning Ordinance ¶ 34(G). It is entirely appropriate for the County to

draw such distinctions between signs that bear a relationship to the business and those that are unrelated to the business; after all, the former are commercial advertising signs, and as explained above, the government may validly impose greater restrictions on them than on noncommercial speech. See Central Hudson, 447 U.S. at 564. Additionally, for the same reasons as explained above, merely undertaking a cursory inquiry into whether a display relates to or advertises a business does not amount to content-based discrimination. The "any relationship to [the] business" language is also not unconstitutionally standardless or vague because a reasonable person could easily understand and apply that very basic test.

Finally, plaintiff's overbreadth challenge was not properly pled, as plaintiff raised that argument for the first time in its Opposition to defendant's Motions to Dismiss. See Pl.'s Opp. to Mot. to Dismiss at 9. However, even if the Court considers that argument, neither the ordinance itself nor Artman's "any relationship to [the] business" interpretation is *substantially* overbroad, "judged in relation to the [ordinance's] plainly legitimate sweep" in regulating potentially harmful commercial speech. See Broadrick v. Oklahoma, 413 U.S. 601, 615-16 (1973). The ordinance is therefore not facially unconstitutional, and Artman's application of it to forbid Wag More Dogs' 960-square-foot advertising sign - a sign that is plainly related to plaintiff's

business and even to plaintiff's own logo - is not unconstitutional as applied. For those reasons, Wag More Dogs has simply failed to allege a plausible First Amendment violation under either the plain text of the Zoning Ordinance or any County interpretation thereof.

## D. The County's Proffered Alternatives Do Not Constitute First Amendment Violations

Aside from attacking §§ 34(B) and 34(G) of the ordinance, plaintiff has also raised First Amendment challenges to several alternative solutions proffered by County officials. Specifically, plaintiff argues that Arlington County's "Comprehensive Sign Plan," which requires individuals and businesses to apply for and obtain a special exception permit to the generally applicable zoning restrictions on advertising signs before displaying large business-related signs like the one painted on the Wag More Dogs building, is an unconstitutional prior restraint on speech. See Pl.'s Mot. for Prelim. Inj. at 7-8. Additionally, plaintiff contends that the County's proposed alternative of allowing Wag More Dogs to maintain the mural on its building by simply painting "Welcome to Shirlington Park's Community Canine Area" below the artwork constitutes compelled speech in violation of the Supreme Court's holdings in W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624 (1943), and Wooley v. Maynard, 430 U.S. 705 (1977). Neither argument has merit.

### 1. The County's Comprehensive Sign Plan is not
### an unconstitutional prior restraint on speech.

Arlington County's zoning scheme allows individuals and businesses to obtain exemptions from the regular zoning restrictions if they apply for and receive Comprehensive Sign Plan "use permits" under § 34(A) and § 36(G) of the Zoning Ordinance. Citing <u>Freedman v. Maryland</u>, 340 U.S. 268 (1951), plaintiff argues that the Comprehensive Sign Plan is an unconstitutional prior restraint on speech. <u>See</u> Pl.'s Compl. ¶ 123 (alleging that the option of applying for a Comprehensive Sign Plan exemption is an "unconstitutional burden on Plaintiff's speech").

However, licensing and permitting limitations that are content-neutral on their face are not required to meet the four-factor test set forth in <u>Freedman</u>. Instead, they need only meet the lighter test established in <u>Thomas v. Chicago Park District</u>, 534 US. 316 (2002), which requires adequate standards to cabin officials' discretion and a fair opportunity for judicial review. <u>Id.</u> at 322-23 ("A licensing standard which gives an official authority to censor the content of speech differs *toto coelo* from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like."). As previously explained, Arlington County's sign ordinance scheme is content-neutral on its face, meaning that the less stringent test in <u>Thomas</u> governs.

Furthermore, applying that test to the facts of this case reveals that the County's Comprehensive Sign Plan is perfectly

constitutional. Decisions on granting or denying use permit applications are made by the elected governing body of the County, in light of proper zoning interests in health, safety, the public welfare, and property values. See Arlington County Zoning Ordinance §§ 34(a)(3) & 34(G)(1); see also Va. Code Ann. §§ 15.2-2280, 15.2-2283 (2008); Cole v. City Council of City of Waynesboro, 218 Va. 827 (1978). The ordinance also contains valid standards under established state law, as recognized by both Virginia courts and the Fourth Circuit. See Nat'l Mar. Union of Am. v. City of Norfolk, 202 Va. 672 (1961) (upholding substantially similar standards for use permit approval as providing sufficient protection against arbitrary and unconstitutional decision-making); see also Steakhouse, Inc. v. City of Raleigh, N.C., 166 F.3d 634, 639 (4th Cir. 1999) (upholding the denial of a preliminary injunction in a case where a special use permit was required for a topless dancing establishment). Finally, the County Board's legislative decisions are subject to proper judicial review in state court. See Va. Code Ann. § 15.2-2285.F (2008) (providing that an aggrieved party may file an action contesting the granting or failure to grant a special exception permit in the proper Virginia Circuit Court within thirty days of the challenged action). Arlington County's process for granting special use exceptions under its Comprehensive Sign Plan is therefore constitutional as a matter of law, and plaintiff's allegations to the contrary in its Complaint will be dismissed for failure to state a plausible claim.

## 2. Plaintiff states no valid claim of unconstitutionally compelled speech.

Lastly, plaintiff contends that the County's proposed alternative of allowing Wag More Dogs to retain its mural if it simply paints "Welcome to Shirlington Park's Community Canine Area" on it, thereby converting it into a proper "public information sign" under § 34(E)(4) of the ordinance, is compelled speech. That argument, however, is belied by the facts alleged in the Complaint itself, which states that the County gave plaintiff several alternative "option[s]" to bring its sign into compliance with the Zoning Ordinance, of which including the additional "Shirlington Park" lettering on the mural was only one. See Pl.'s Compl. ¶¶ 73, 76, 107 (reciting the choices offered to Wag more Dogs, including replacing the artwork with an image that does not advertise its business, removing the mural, applying for an exception under the Comprehensive Sign Plan, or painting the wall such that it is a sign for the adjacent public dog park).

Because adding the "Shirlington Park" lettering was only one of several proffered alternatives, Wag More Dogs is not actually required to engage in any speech whatsoever if it does not wish to do so. In fact, plaintiff could always simply remove its current mural, and thereby avoid expressing any message at all. In its discretion, however, the County offered plaintiff an alternative that would respect its professed desire to retain its "happy cartoon dog" artwork, which the Complaint alleges beautifies the neighborhood, see Compl. ¶ 25, while simultaneously ensuring that

29

the mural complies with the Zoning Ordinance and does not invite other businesses to skirt the 60-square-foot sign limitation with similar paintings. In short, plaintiff's argument that the County's efforts to offer plaintiff various choices, in the interest of reaching a mutually acceptable compromise, somehow constitutes a First Amendment violation is the very definition of an implausible claim.

## IV. Conclusion

As murals go, Wag More Dogs' is a relatively attractive one, and according to the Complaint, many patrons of the nearby local dog park quite enjoy it. See Pl.'s Compl. ¶ 33. If the mural were no larger than 60 square feet in size, Arlington County would therefore likely have no concern with it, under the terms of its Zoning Ordinance or otherwise. That, however, is not the point. As it currently stands, plaintiff's 960-square-foot mural is a form of advertising and commercial speech that plainly violates the County's valid, content-neutral restriction on the size of business signs in "M" industrial districts. Accordingly, even taking all of the facts alleged by plaintiff as true, plaintiff's Complaint states no plausible First Amendment violation under governing precedent and must be dismissed as a matter of law.

For all the reasons stated above, defendants' Motions to Dismiss for Failure to State a Claim and Lack of Jurisdiction [Dkt. Nos. 15, 18, and 19] will be granted, plaintiff's Motion for Preliminary Injunction [Dkt. No. 3] will be denied as moot, and

plaintiff's Complaint will be dismissed with prejudice by an Order

to be issued with this Memorandum Opinion.

Entered this $\underline{10}$th day of February, 2011.


Alexandria, Virginia

_____ /s/ _____
Leonie M. Brinkema
United States District Judge





**"On the Shirlington Dog Park"**

Owner and Staff  Store Info  Jobs  Calendar

# Dog daycare and Dog boarding in Arlington Virginia on the Shirlington Dog Park



## NOW OPEN - FREE EVALUATIONS

### News and Updates for September

- Send us an email reservation for daycare, boarding or grooming today!
- See our Specials on daycare under Specials
- Checkout our new DOG NEWS page
- Like US at our Wag More Dogs FACEBOOK page.
- Stayed tuned for updates on the Dog Park Mural!!

**Wag More Dogs** located directly on the Shirlington Dog Park, is soon to be Northern Virginia's favorite cage-free daycare, boarding and grooming service.  At Wag More Dogs we are committed to superior pet care.  All members of our staff are trained in the standards of the Pet Care Services

http://wagmoredogs.com/